**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **FRIEDRICH AIR CONDITIONING CO., LTD., by and through its general partner, FAC MANAGEMENT, LLC** | ) | |
| **Plaintiff,** | ) | **Civil Action No. SA-08-CA-541-XR** |
| **VS.** | ) | |
| **GENIE AIR CONDITIONING AND HEATING, INC.** | ) | |
| **Defendant.** | ) | |

**ORDER**

Plaintiff filed suit in the 225th Judicial District Court of Bexar County, averring breach of contract claims against Defendant, a distributor of its products. Defendant removed the case to this Court and subsequently filed a Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer for Convenience of Parties and Witnesses and in the Interest of Justice (Docket No. 5). Plaintiff filed a response in opposition, which the Court has considered, along with the motion and the applicable case law. Having applied the pertinent law to the facts before it, the Court DENIES Defendant's motion.

**Precis**

Plaintiff Friedrich Air Conditioning Co., Ltd. (Friedrich) is a limited partnership organized and existing under the laws of Texas, with its principal office in San Antonio, Texas.

FAC Management, LLC (FAC Management) is the general partner of Friedrich and exists under the laws of Texas, with its principal office in Vancouver, Washington.

Defendant Genie Air Conditioning and Heating, Inc. (Genie) is organized and exists under the laws of California, with its principal office in Van Nuys, California.

Friedrich manufactures and sells air conditioners and related parts and equipment. Genie was formerly a distributor of Friedrich products. According to Plaintiff, between May and July 2007, Genie ordered, contracted to pay for, and took delivery of Friedrich equipment for which it still owes Friedrich $55,156.35.

Plaintiff further contends that Genie contracted to purchase other air conditioner equipment that Plaintiff specially arranged to be manufactured in China. According to Plaintiff, the parties agreed that the products would be delivered to Long Beach, California, where Defendant would take possession of the shipment. Because Defendant purportedly failed to accept the products, Plaintiff pleads that it incurred $42,177.09 in storage and shipping fees.

After Plaintiff filed suit in the 225th Judicial District Court of Bexar County, Defendant removed to this Court on the basis of diversity jurisdiction. Defendant then filed a motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer the case to the Central District of California.

**Analysis**

Personal Jurisdiction - Overview

As an initial matter, "when a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of

discovery."[1] In so doing, the court must resolve relevant factual disputes in the plaintiff's favor, and the plaintiff "need only plead a *prima facie* case for personal jurisdiction."[2]

In Texas the state long-arm statute provides courts with "personal jurisdiction over a foreign defendant to the fullest extent allowed by the federal constitution."[3] Accordingly, the "usual two-step analysis reduces to one step, and we consider whether exercising jurisdiction over [the Defendant] is consistent with the Due Process Clause of the Fourteenth Amendment."[4]

As the Fifth Circuit has said, "the Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when 1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and 2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'"[5] The court went on to state that "minimum contacts . . . can be established through contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction."[6]

Plaintiff concedes that general jurisdiction does not attach to Defendant, meaning that if there is personal jurisdiction, it must be specific personal jurisdiction.

In "deciding whether [specific] personal jurisdiction is consistent with the Due Process

---

[1] Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997).

[2] Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 424 (5th Cir. 2005).

[3] Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 214 (5th Cir. 2000).

[4] *Id.*

[5] Mink v. AAAA Development LLC, 190 F.3d 333, 336 (5th Cir. 1999).

[6] *Id.*

Clause," the Court considers "1) whether the defendant has minimum contacts with the forum state . . . [and] 2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[7] If a plaintiff makes a prima facie showing of facts that meets these two requirements, then the "burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable."[8]

Minimum Contacts - Overview

"A defendant establishes minimum contacts with a state if the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there."[9] The defendant must engage in some act whereby it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws . . . Even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact."[10]

Minimum Contacts - Defendant Genie

Defendant has established sufficient contacts with Texas to meet the minimum contacts threshold. From approximately 1993 through 2007, Defendant was a distributor for Friedrich's air conditioners and related parts.[11] According to Plaintiff, Defendant regularly "faxed or emailed orders to Friedrich in San Antonio, Texas for Friedrich products, took title to most of the products in San

---

[7] Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002).

[8] *Id*. at 378, 382.

[9] *Id*. at 379.

[10] *Id*.

[11] Docket No. 13, Declaration of Phil Mintz at 3.

Antonio, Texas, and paid Friedrich for the products by delivering payment to Friedrich either in San Antonio or to Friedrich's bank lockbox in Dallas, Texas."[12]

During the period from 2003 through 2007 alone, Defendant apparently ordered $12,800,000 worth of products from Friedrich by sending written orders for goods to Friedrich's addresses in Texas.[13] Moreover, Plaintiff contends that "more than half of Genie's purchases from Friedrich were for goods that Friedrich delivered to Genie (or its shipper) in San Antonio, Texas. Those sales were 'F.O.B. Shipping Point,' which means that Friedrich passed title to the goods to Genie in San Antonio, Texas."[14]

Plaintiff also attaches declarations from multiple officers within Friedrich evincing that Defendant's officers made contact with them in Texas on numerous occasions via phone, fax, email, and other means.

Viewed cumulatively, these alleged connections with Friedrich officials and operations in Texas evidence that Defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[15] The Court next turns to "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[16]

---

[12] *Id.*

[13] *Id.* at 4-5. Plaintiff contends that Genie submitted exactly 100 purchase orders to it in Texas between 2005 and 2007. Docket No. 15, Declaration of Brian Komorek at 2.

[14] Docket No. 13, Declaration of Phil Mintz at 5.

[15] *Nuovo Pignone, SpA*, 310 F.3d at 379.

[16] *Id.* at 378.

Claims Arising out of Defendant's Contacts with Texas

While Plaintiff does not explicitly allege that the $55,156.35 worth of items supposedly ordered and received by Defendant arose from orders sent to Plaintiff in Texas, given how Plaintiff argues it generally received orders from Defendant and how it always made final decisions on orders, this appears to be a reasonable deduction to make from the pleadings and evidence. At any rate, Defendant was well aware that Plaintiff was based out of Texas and that any orders made to Plaintiff would inevitably involve actions being taken in Texas.

Furthermore, Plaintiff explicitly contends that Defendant contracted with it in Texas to purchase the air conditioner equipment that Plaintiff arranged to be manufactured for Defendant in China.[17] Furthermore, Plaintiff avers that payment for these items was to take place in Texas.

Thus, when viewed in the light of the ongoing, extensive business relationship between the parties, a relationship that clearly involved Defendant purposefully availing itself of the benefits of doing business in Texas, it is apparent that the specific causes of action asserted by Plaintiff resulted in significant part from the Defendant's Texas-related contacts. Defendant's orders were directed to Texas, its payments were due to Texas, and it knew that the effectuation of its orders would require at least executive-level pricing, billing, and possibly manufacturing, shipping, and storage decisions to be made in Texas.

Therefore, the Court finds that the minimum contacts test for specific personal jurisdiction is met as it pertains to Defendant's Texas contacts in this case.[18]

---

[17] *See* Plaintiff's Complaint at 3.

[18] This case is easily distinguishable from the *Barnstone v. Congregation Am Echad*, 574 F.2d 286 (5th Cir. 1978) decision relied on by Defendant. That case involved a one time transaction between a religious group in Maine and an architect in Texas, where the defendant's contacts with

Traditional Notions of Fair Play and Substantial Justice

The burden of proof now shifts to Defendant "to show that the assertion of jurisdiction is unfair and unreasonable."[19] To do so, it "must make a compelling case."[20] In evaluating whether a defendant has presented such a case, courts look to "1) the burden on the nonresident defendant; 2) the interests of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in the most efficient resolution of controversies; and 5) the shared interests of the several states in furthering fundamental social policies."[21]

Starting with the first prong, while litigating in California would be easier on the Defendant, there are advantages to pursuing the case in Texas. Many of the key witnesses are located here, as well as documentation related to orders submitted by Defendant, billing information, and costs associated with manufacturing, shipping, and storage.

Moving to prong two, Texas has an interest in ensuring that the legal rights of its companies are protected, and where Texas breach of contract law is at issue, seeing that disputes are properly adjudicated by courts with familiarity with such law.

As for prong three, the Plaintiff is based in Texas, conducts extensive business activity within Texas, and has an interest in obtaining any relief to which it is entitled, whether from a court based

---

Texas were tenuous at best. Here, however, the parties had an ongoing business relationship for over fifteen years, with Defendant submitting apparently hundreds of orders to Plaintiff in Texas and communicating not infrequently with Plaintiff's Texas headquarters concerning numerous business transactions, including, Plaintiff alleges, the transactions underlying this suit.

[19] *Nuovo Pignone, SpA*, 310 F.3d at 382.

[20] *Id.*

[21] *Id.*

in Texas or elsewhere.

As for prong four, the interstate judicial system's interest in the most efficient resolution of controversies is served by litigating this case in either Texas or California, the states of incorporation for Friedrich and Genie, respectively.

Finally, with respect to the fifth prong, there is no evidence to suggest that the shared interests of the states in furthering fundamental social policies is hampered by this Court's assertion of jurisdiction over Defendant.

Therefore, this Court finds that it has personal jurisdiction over Defendant.

Motion to Transfer Venue - Overview

Defendant alternatively argues that even if the Court possesses personal jurisdiction over it, this case should be transferred to the Central District of California.

28 U.S.C. § 1404(a) reads that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

As an initial matter, Plaintiff concedes this action could have been brought in the Central District of California. Thus, the inquiry turns on whether transfer of venue would be "in the interest of justice" and "for the convenience of [the] parties and witnesses."[22] This inquiry is guided by a number of private and public interest factors, none of which is dispositive.[23]

The private interests are:

---

[22] 28 U.S.C. §1404(a).

[23] Action Industries, Inc. v. United States Fidelity & Guaranty Co., 358 F.3d 337, 340 (5th Cir. 2004).

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.[24]
>
> The public interests are:
>
> 1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.[25]

Private and Public Factors Applied to This Case

Starting with the private factors, the evidence in this case will primarily be located in Texas and California, as those are the states where Friedrich and Genie have their principal places of business. Friedrich's records related to the transactions between the two companies will be mainly found in Texas, with Genie's in California. Thus, transferring this case to California is unlikely to improve the ease with which the parties can access the relevant evidence.

Likewise, because Plaintiff's key witnesses reside in Texas and Defendant's in California, transfer from one venue to another is not likely to increase witness availability through compulsory process.

Similarly, the cost of attendance for willing witnesses is not reduced by a transfer of venue. If venue remains in Texas, California witnesses will have to pay to travel here. If venue is changed to California, Texas witnesses will be forced to pay to travel there. Either way, one side's witnesses will be traveling halfway across the country.

The Court finds that there are no private factors that weigh toward transfer of venue. In short,

---

[24] In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004).

[25] *Id.*

this case involves breach of contract allegations between a Texas company and a California company. Both sides would like to litigate in their home states. Unfortunately, only one can. Plaintiff gets to choose where its case is filed, and unless the private and public factors weigh in Defendant's favor, that decision must go undisturbed.

Turning to the public factors, Defendant acknowledges that "the administrative difficulties flowing from court congestion weigh neither in favor of granting or denying Genie's motion."[26]

As for the local interests factor, Defendant rightly concedes that it "weighs equally in favor and against transfer."[27]

Concerning familiarity with the relevant law, this case involves claims arising under Texas law for breach of contract. While courts in both states are competent and able to address such claims, the fact that it is Texas law that is being construed certainly does not weigh in favor of transferring this case to California.

Finally, Defendant points to a pending case in California between the same parties to suggest that transfer of venue would avoid potential conflict of law challenges. Defendant articulates its argument as follows:

> There is the potential for a California state court to issue a judgment in one case and a Texas federal court to issue a second judgment. Those judgments may conflict with one another, at which point determining what law to apply and how to best enforce each judgment could become a very real conflict of law problem. If both judgments are reached in the State of California, those conflict issues are substantially lessened.[28]

---

[26] Docket No. 5 at 12.

[27] *Id.*

[28] *Id.* at 13.

In response, Plaintiff contends that the claims in the pending California state court action are unrelated to the claims in this case. Apparently, that case concerns a breach of an alleged exclusive distributorship agreement between the parties, not a failure to pay for products received or a failure to accept items properly manufactured and delivered.

Additionally, even if this case were transferred to a federal court in California, there would still be two judgments issued - one from a state court and the other from a federal court. To the extent Defendant contends that it is somehow better to have two judgments from courts of the same state, Plaintiff rightly points out that the Full Faith and Credit Clause compels courts of one state to honor judgments issued by courts of another state.

In sum, having weighed the private and public factors governing a request for transfer of venue, the Court finds that the factors do no weigh in favor of transfer.

**Conclusion**

For the reasons stated herein, Defendant's motion to dismiss for lack of personal jurisdiction, or alternatively, to transfer venue (Docket No. 5) is DENIED.

It is so ORDERED.

SIGNED this 15th day of August, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE